# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JEFF PAUL, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-1490-B |
| | § | |
| AVIVA LIFE AND ANNUITY | § | (Part of MDL No. 1983; Formerly |
| COMPANY, | § | No. CV 09-1038 in the |
| | § | Northern District of Illinois) |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Aviva Life and Annuity Company's ("Aviva") Motion to Dismiss Plaintiffs' Complaint (doc. 20), filed April 17, 2009. Having considered the parties' briefings, the Court finds the motion should be and hereby is **GRANTED.** Plaintiffs' complaint is hereby **DISMISSED WITHOUT PREJUDICE**.

## I.

## BACKGROUND[1]

Plaintiffs[2] in this putative class-action lawsuit are individual business owners and the closely-held corporations they operate. (Compl. ¶1.) Defendant Aviva[3] created and promoted a program

---

[1]The background facts are derived from Plaintiffs' Complaint ("Complaint") (doc. 1), filed February 18, 2009, and on undisputed facts gleaned from the parties' court papers. Where there may be a dispute over a stated fact, the Court has so indicated by claiming the fact as one stated by that party to be true.

[2]Plaintiffs are Jeff Paul, Margaret Paul, and PPS Advertising Inc. (collectively "the Paul Plaintiffs"); and Jim Fleck, Amy Fleck, and International Profit Systems Inc. (collectively "the Fleck Plaintiffs").

[3]Formerly known as Amer US Life Insurance Company, Aviva Life Insurance Company, and Indianapolis Life Insurance Company. (Compl. 1.)

that was "marketed as an employee benefit plan funded by the purchase of defendant's life insurance policies." *Id.* The Complaint alleges that the employee benefit plan was known as a "419 Plan," because it was governed by IRS code section 419. (Compl. ¶ 2.) The program was represented as a safe retirement vehicle that would provide financial benefits, such as reductions in tax liability and protection of financial assets. (Compl. ¶ 18.) Aviva failed to disclose the program's risks. (Compl. ¶¶ 26, 37.) In particular, Aviva knew that the IRS had for a long time cast doubt on the legality of similar arrangements and indicated that these arrangements may be deemed abusive tax shelters. (Compl. ¶ 3.)

A.    *The Paul Plaintiffs*

According to the Complaint, Aviva's agent Melvin Abrams[4] ("Abrams") met with the Paul Plaintiffs in December 2002 to discuss the program. (Compl. ¶ 24.) The Paul Plaintiffs were "assured they could legally shelter $500,000 of their income 'tax-free'" and told of the program's benefits, safety, and IRS compliance. (Compl. ¶¶ 24, 26.) Relying on Abrams' representations, the Paul Plaintiffs on or about December 31, 2002 established a 419 Plan and began making the necessary contributions to cover the insurance policies' premiums. (Compl. ¶¶ 26, 27.) From 2002 to 2006, the Paul Plaintiffs contributed about $505,000 to pay for the policies and 419 Plan administration. (Compl. ¶ 29.) The Paul Plaintiffs deducted all contributions on their annual corporate tax return. *Id.*

In 2007, the Paul Plaintiffs were notified by the IRS that their 419 Plan was being audited.

---

[4]The parties characterize Abrams as an agent of Aviva throughout the majority of the pleadings, though this characterization is called into doubt by Aviva's reply brief in support of its motion to dismiss, which refers to Abrams as "Plaintiffs' professional tax adviser." (Def.'s Reply Mem. Supp. Mot. Dismiss 1 ("Mot. Reply").) The Court does not reach the issue of Abram's proper characterization and assumes for the purposes of this order that Abrams is an agent of Aviva, as pleaded by the Complaint.

(Compl. ¶ 30.) In 2008, after completing the audit, the IRS informed the Paul Plaintiffs that their 419 Plan and policies did not comply with tax laws. (Compl. ¶ 31.) This determination by the IRS resulted in financial harm to the Paul Plaintiffs in the form of disqualification of deductions, "back taxes, penalties and imposed interest continuing to accrue through the present."

B.    *The Fleck Plaintiffs*

The factual allegations regarding the Fleck Plaintiffs are almost identical to those regarding the Paul Plaintiffs. Aviva's agent Abrams met with the Fleck Plaintiffs in or about December 2004 to discuss the program. (Compl. ¶ 35.) The Fleck Plaintiffs were "assured they could legally shelter approximately $500,000 of their income 'tax-free'" and told of the program's benefits, safety, and IRS compliance. (Compl. ¶¶ 35, 37.) Relying on Abrams' representations, the Fleck Plaintiffs on or about December 31, 2004 established a 419 Plan and began making the necessary contributions to cover the insurance policies' premiums. (Compl. ¶¶ 38, 39.) From 2004 to 2007, the Fleck Plaintiffs contributed about $300,000 to pay for the policies and 419 Plan administration. (Compl. ¶ 40.) The Fleck Plaintiffs deducted all contributions on their annual corporate tax return. *Id.*

In 2008, the Fleck Plaintiffs were notified by the IRS that their 419 Plan was being audited. (Compl. ¶ 41.) Later that year, after completing the audit, the IRS informed the Fleck Plaintiffs that their 419 Plan and policies did not comply with tax laws. (Compl. ¶ 42.) This determination by the IRS resulted in financial harm to the Fleck Plaintiffs in the form of disqualification of deductions, "back taxes, penalties and imposed interest continuing to accrue through the present." (Compl. ¶ 43.)

On February 18, 2009, Plaintiffs filed this suit against Aviva, alleging causes of action based on the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1062(a)-(d),

intentional and negligent misrepresentation, fraudulent concealment, breach of fiduciary duty, and civil conspiracy. On April 17, 2009, Aviva filed this Motion to Dismiss (doc. 20). In August 2009, this case was transferred from an Illinois federal district court to this Court by the Multidistrict Litigation Panel. MDL Transfer Order Aug. 12, 2009 (doc. 54). The motion is now ripe for disposition. After setting forth the applicable legal standards, the Court will address Aviva's arguments in support of the Motion to Dismiss and Plaintiffs' arguments in opposition.

## II.

## LEGAL STANDARD

A.    *Law Applicable in MDL Cases*

This action is before the Court as a result of a forum transfer by the Multidistrict Litigation Panel. Therefore, as to matters of state law, the Court is bound to apply the state law of the transferor forum. 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* ("Wright & Miller") § 3866 (3d. ed. 2004) at 528-29 (2007) (citing *In re Air Disaster at Ramstein Air Base*, 81 F.3d 570, 576 (5th Cir. 1996) and *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (other citations omitted)). As to matters of federal law, however, the Court applies the law of the transferee court. *Menowitz*, 99 F.2d at 40 (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (other citations omitted)).

As this case was originally filed in Illinois federal district court, the Court applies Illinois state substantive law as to matters of state law. *See* 15 Wright & Miller § 3866 at 528-29 (and cases cited therein). On the other hand, as to matters of federal law, the Court looks to the law of this Court and this Circuit for the controlling RICO and Federal Rules of Civil Procedure 12(b)(6) (Rule "12(b)(6)") and 9(b) ("Rule 9(b)") standards. *See, e.g., Prudential Ins. Co. of Amer. v. Clark*

*Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008) (explaining that, as an initial matter, pleading requirements in federal courts are governed by the federal rules and not by state law).

B.    *Rule 12(b)(6) Standard*

In analyzing a motion under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). The motion should be granted only if the complaint does not include enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim must be "nudged . . . across the line from conceivable to plausible." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *SW Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

C.    *Rule 9(b) Standard*

A dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Rule 9(b) provides, in pertinent part, that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). In the Fifth

Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). In other words, the complaint must provide "the essentials of the first paragraph of any newspaper story." *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

## III.

## ANALYSIS

Defendant Aviva has filed a motion to dismiss the Complaint for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b). (Def.'s Mot. Dismiss 1.) Aviva contends that Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6), because Plaintiffs have failed to state a claim upon which relief may be granted. *Id.* at 1-3. Aviva also argues that each count is premised on allegations of fraud and that each count should be dismissed under Rule 9(b) for failure to plead fraud with the required particularity. *Id.* at 1-2.

A.     *Counts One through Four (RICO violations under §§ 1962(a)-(d))*

Counts One, Two, Three, and Four allege that Aviva violated four RICO subsections under 18 U.S.C. §§ 1962(a)-(d). (Compl. ¶¶ 65-89). In substance, the subsections state:

> (a) a person who has received income from a pattern of racketeering cannot invest that income in an enterprise.

> (b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering.

> (c) a person who is employed or associated with an enterprise cannot conduct the enterprise's affairs through a pattern of racketeering.

(d) a person cannot conspire to violate subsections (a), (b), or (c).

*In re Burzynski*, 989 F.2d 733, 741 (5th Cir. 1993) (summarizing 18 U.S.C. § 1962). All four subsections share three basic elements: "(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988), *cert. denied*, 489 U.S. 1079 (1989) (emphasis omitted). Aviva argues that the RICO claims are insufficiently pleaded, because they do not plead an enterprise, predicate acts, and statutory elements unique to certain subsections. The Court will address each argument in turn.

i. RICO Enterprise

Aviva challenges all the RICO counts on the ground that the Complaint fails to state an enterprise. The Supreme Court has explained that an enterprise is "a *group of persons* associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added). A RICO enterprise may be either a legal entity or an association-in-fact. 18 U.S.C. § 1961(4). If the enterprise alleged is an association-in-fact enterprise, the plaintiff must show evidence of an "ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583.

The Complaint alleges the enterprise as follows:

> Defendant has engaged in a pattern of racketeering activity, consisting of numerous predicate acts of wire and mail fraud . . . all of which acts were in furtherance of the enterprise of [Defendant] including, but not limited to, the establishment of a 419 Plan coupled with the sale of its life insurance policies, hereinafter collectively referred to as the establishment of a "419 enterprise" which enterprise was engaged in interstate or foreign commerce and which activity affects interstate or foreign commerce.

(Compl. ¶ 66.) According to Aviva, this formulation attempts to define the "419 enterprise" in terms

of conduct: "the establishment of a 419 Plan coupled with the sale of its life insurance policies." (Def.'s Br. Supp. Mot. Dismiss 12.) As a result, Aviva argues, the enterprise is improperly defined and the RICO claims fail. *Id.* The Court agrees. The Complaint has not characterized the enterprise as "an entity separate and apart from the pattern of activity in which it engages." *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987) (quoting *Turkette*, 452 U.S. at 583).

Moreover, the Complaint also pleads a defective enterprise because it is unclear who is included in the "group of persons" involved. *Turkette*, 452 U.S. at 583. The Complaint never states in a definitive manner which individuals or entities are in the enterprise. Instead, Plaintiffs only mention Defendant Aviva, Aviva's agent Abrams, and an unnamed plan administrator at different times in the Complaint. Although Plaintiffs try to relieve the ambiguity in their opposition brief, this attempt is unsuccessful because the explanations are either contradictory or unsupported by the Complaint. For example, Plaintiffs contend that the enterprise is composed of Aviva, Niche Marketing Inc., 419 Trust Administrators, Inc., and Abrams. (Opp'n 5.) But this does not clarify the enterprise for several reasons. First, Niche Marketing, Inc. and 419 Trust Administrators are never mentioned in the Complaint. Second, the newly-discussed Niche Marketing, Inc.'s role as "marketers of the Plan," Opp'n 5, runs counter to the Complaint, which stated that "[Defendant] is responsible for the creation of the fraudulent marketing materials," Compl. ¶ 47. The enterprise picture is obscured further when, one sentence later, Plaintiffs redefine the enterprise as "[Defendant], Niche Marketing, and Administrator 419 Trust Administrators, Inc." (Opp'n 5.) Without a clear expression of the persons making up the enterprise, the Complaint has not sufficiently pleaded a RICO enterprise.

ii.    RICO Predicate Acts

Aviva also argues that the RICO claims fail to sufficiently plead the predicate acts of fraud. As noted above, the second common element of all RICO claims is a pattern of racketeering activity. *Delta*, 855 F.2d at 242-43. This element requires two components: (1) predicate acts and (2) a pattern of such acts. *Id.* Predicate acts include certain federal offenses enumerated in § 1961(1), such as mail, wire, and bank fraud. *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996).

Rule 9(b)'s heightened pleading requirement applies to pleading fraud as a predicate act of a RICO claim. *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1004 (S.D. Tex. 1995) (citing *Tel-Phonic Servs. Inc. v. TBS Int'l. Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992)). As such, for each fraud-based predicate act, "a plaintiff must at a minimum allege the 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.*

Plaintiffs' RICO claims are grounded in the predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. (Compl. ¶ 66.) RICO mail fraud requires a showing of: "(1) a scheme to defraud by means of false or fraudulent representation, (2) interstate or intrastate use of the mails to execute the scheme, (3) the use of the mails by the defendant connected with scheme [sic], and (4) actual injury to the plaintiff." *In re Burzynski*, 989 F.2d at 742 (citation omitted). RICO wire fraud requires a showing of essentially the same elements, except the communication must be interstate. *Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987); *Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988).

After reviewing the Complaint, the Court finds that it fails to sufficiently allege predicate acts of mail and wire fraud. The Complaint references mail and wire fraud only three times and each

instance is done in a conclusory boilerplate fashion. (Compl. ¶¶ 22, 66, 74.) Although the Complaint

pleads some dates related to Aviva's alleged program, (Compl. ¶¶ 24, 27, 28), such allegations are

not tied to mail or wire fraud. Even the most detailed allegation fails to specifically allege the time,

place, contents, and other requisite information of a predicate act of fraud:

> These false and misleading advertising and sales presentations, premium and benefit
> illustrations, and other marketing materials were prepared and disseminated directly
> by [Defendant] and/or its agents using the US mails or wires in interstate commerce
> and induced Plaintiffs and those they seek to represent to purchase [Defendant's] life
> insurance policies.

(Compl. ¶ 22.) In support of the predicate acts, Plaintiffs attached exhibits to their opposition brief.

The exhibits include copies of cancelled checks, (Opp'n Ex. 6 (doc. 29-2)), and correspondence

related to insurance policies, (Opp'n Ex. 5 (doc. 29-2)). For purposes of this motion to dismiss, the

Court does not rely on these exhibits, because Aviva does not rely on the exhibits and challenges

Exhibit 5 on the grounds that it is unrepresentative of the insurance policy. (Mot. Reply 2-3.)

Furthermore, the Complaint does not reference the exhibits. *Walch v. Adjutant Gen.'s Dept. of Tex.*,

533 F.3d 289, 294 (5th Cir. 2008) (considering plaintiff's exhibits attached to opposition brief to

defendants' motion to dismiss where defendants referenced the same documents, neither party

questioned authenticity of documents, and complaint referenced the same documents); *cf. Causey*

*v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant

attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the

plaintiff's complaint and are central to the claim.") (citation omitted). Accordingly, Plaintiffs have

failed to plead the predicate acts of mail and wire fraud.


    iii.    Count Three (§ 1962(a))

Aviva has specifically challenged Count Three on the grounds that it does not plead the proper type of injury. (Def.'s Br. Supp. Mot. Dismiss 14.) To successfully plead a RICO claim under § 1962(a), Plaintiffs must allege an investment injury. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 443 (5th Cir. 2000). This investment injury "cannot just flow from the predicate acts themselves." *Id.* In contrast, the investment injury is the injury that stems from the *investment or use* of racketeering proceeds. *Id.* (emphasis added) Without this distinction, there would be no difference between § 1962(c) and § 1962(a) and "it would be difficult to understand why Congress enacted 1962(a)." *Id.* (citing *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1230 (D.C. Cir. 1991)).

Here, the Complaint alleges that "Plaintiffs have been injured as a result of Defendant's use and investment of racketeering proceeds." (Compl. ¶ 85.) Although an investment injury has been pleaded, it is entirely conclusory. There are no well-pleaded facts to support that Plaintiffs have suffered an investment injury, as opposed to an injury arising from the predicate acts. Because the Court finds that the Complaint has gone no further than "a formulaic recitation" of the elements, the Court **GRANTS** the motion to dismiss Count Three. *Twombly*, 550 U.S. at 555.

### iv.    Count Four (§ 1962(d))

Aviva raises two specific reasons for dismissal of the RICO conspiracy claim: first, that the claim is dependent on the successful pleading of another RICO claim; and second, that the Complaint fails to plead facts supporting the elements. (Def.'s Br. Supp. Mot. Dismiss 13 n.10.) The Court agrees with both arguments.

First, by its statutory terms, a RICO conspiracy claim is a conspiracy to violate one of the other subsections of § 1962. 18 U.S.C. § 1962(d). Because all other RICO claims have been

dismissed, the RICO conspiracy claim must also be dismissed. Second, the Court finds that the Complaint insufficiently states an agreement. "[T]he core of a RICO civil conspiracy is an agreement to commit predicate acts." *Tel-Phonic Servs. Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992) (citation omitted). As such, the agreement must be specifically pleaded. *Id.* To specifically plead the agreement, Plaintiffs must plead facts that show that Aviva and its agents, by their "words or actions . . . objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes." *United States v. Elliot*, 571 F.2d 880, 903 (5th Cir. 1978). Nothing in the Complaint supports such an agreement. As a result, the Court has additional and independent grounds to **GRANT** the motion to dismiss Count Four for RICO conspiracy under § 1962(d).

> v.      Aviva's Remaining Arguments

The Court notes that Defendant Aviva raises other concerns regarding the sufficiency of the RICO claims. (Def.'s Br. Supp. Def.'s Mot. Dismiss 13-15.) For example, Aviva argues that "the Complaint does not adequately allege the existence of an injury sufficient to confer standing to pursue violations of RICO sections 1962(a) and (b)." (Def.'s Br. Supp. Mot. Dismiss 14.) Because certain basic features of the RICO claims remain undeveloped–such as the RICO enterprise and predicate acts–the Court does not now reach the remaining arguments.

For the above reasons, Plaintiffs have failed to state any RICO claims with sufficient intelligibility for a court or opposing party to grasp the nature of the claims. Accordingly, the Court **GRANTS** the motion to dismiss as to Counts One, Two, Three, and Four.


B.      *Count Five (Intentional Misrepresentation) and Count Six (Negligent Misrepresentation)*

In Counts Five and Six, the Complaint alleges that Aviva and its agents misrepresented the benefits and risks associated with its insurance policies and 419 Plan. The elements of intentional misrepresentation[5] are: "(1) a false statement of material fact; (2) made by a party who knows or believes the statement to be false; (3) with the intent to induce another to act; (4) action by the other in reliance on the statement's truth; and (5) injury to the other resulting from that reliance." *Smith v. Kurtzman*, 531 N.E.2d 885, 889 (Ill. App. Ct. 1988) (citations omitted). Negligent misrepresentation has essentially the same elements, except that the "defendant need not know that the statement is false. His own carelessness or negligence in ascertaining its truth will suffice for a cause of action." *Bd. of Educ. of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989). The intentional misrepresentation claim requires that the alleged misrepresentations be statements of fact, not promises of future conduct or opinion. *People ex rel. Peters v. Murphy-Knight*, 618 N.E.2d 459, 463 (Ill. App. Ct. 1993) (citations omitted).

Aviva argues that the alleged misrepresentations are nonactionable as opinions of law or predictions of future conduct. (Def.'s Br. Supp. Mot. Dismiss 7-9.) In response, Plaintiffs note that Illinois state law recognizes a promissory fraud exception where a promise of future conduct can be actionable. (Opp'n 13-14.) The exception applies "where the false promise or representation of intention of future conduct is the scheme or device to accomplish the fraud." *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992). "In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent—a scheme or device," *id.*, and must

---

[5]Under Illinois law, a claim for intentional misrepresentation is equivalent to a claim for fraudulent misrepresentation. *Powers v. Corn Prods. Int'l, Inc.*, 557 F. Supp. 2d 921, 927 (N.D. Ill 2008). *See also Bd. of Educ. of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 593-94 (Ill. 1989).

allege that the defendant intended to induce the plaintiff to act for defendant's benefit, *Price v. Highland Cmty. Bank*, 722 F.Supp. 454, 460 (N.D. Ill. 1989) (Posner, J.) (citation omitted). Courts have cautioned that the exception should only be applied in "particularly egregious cases." *J.H. Desnick, M.D. v. Am. Broad. Co., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995). Whether the present allegations are "particularly egregious" or not is a close question. But the Court does not have to reach an answer as to the Paul Plaintiffs' allegations, because the Paul Plaintiffs have not properly pleaded a false statement of material fact or reliance on such a statement. This Court has found in related cases that the "only definitive guidance specifically applicable to the 412(i) plans at issue, and the alleged representation made regarding the tax benefits and legality of the plans, appears in the IRS's 2004 revenue rulings and 2005 final regulations." *Berry v. Indianapolis Life Ins. Co.*, 638 F. Supp.2d 732, 738 (N.D. Tex. 2009).[6] Accordingly, the Paul Plaintiffs have not sufficiently alleged that Aviva's alleged representations regarding the legality of the Paul Plaintiffs' policies prior to these revenue rulings and final regulations were false when made. Further, "it is inherently unreasonable for any person to rely on a prediction of future IRS enactment, enforcement, or non-enforcement of the law by someone unaffiliated with the federal government." *Berry v. Indianapolis Life Ins. Co.*, 600 F. Supp. 2d 805, 820 n.19 (N.D. Tex. 2009). The Paul Plaintiffs have not alleged that Aviva or its agents had any special knowledge or ability to control future IRS enactment or enforcement such

---

[6]Plaintiffs argue in their Opposition Brief that Aviva knew the proposed 419 Plans were illegal because it was aware of IRS notices issued in 1995 and 2000, as "supported by testimony under oath of its Executive Vice President of Marketing in a California Superior Court proceeding." Opp'n 4 (citing testimony attached as Ex. 4). Normally the Court will not consider documents not attached to the complaint when ruling on a motion to dismiss, *see* Section III(A)(iii), *supra*. Even if the Court did consider this testimony, the Court finds that it only definitively shows that Aviva was aware of at least one IRS notice, not that its executives knew that the specific 419 Plans offered by Aviva were illegal under the existing law at the time, given the Court's finding that the only definitive guidance regarding the 412(i) plans at issue appeared in the IRS's 2004 revenue ruling and the 2005 final regulations.

that they could have reasonably relied on Aviva's representations. As such, the reliance element of intentional and negligent misrepresentation claims cannot be satisfied by the Paul Plaintiffs. Therefore the Court **GRANTS** Aviva's Motion to Dismiss Count Five as to the Paul Plaintiffs' intentional misrepresentation claim. The Court also **GRANTS** Aviva's Motion to Dismiss Count Six as to the Paul Plaintiffs' negligent misrepresentation claim.

This same reasoning does not apply to the Fleck Plaintiffs' claims, however, as Aviva and the insurance community were on notice of the 2004 IRS revenue ruling and its treatment of 412(i) plans at the time the Flecks' plan was established at the end of 2004. Contrary to Aviva's contention that any alleged misrepresentations were merely "opinions of the law or predictions of future regulatory conduct," (Def.'s Br. Supp. Mot. Dismiss 8), these representations, viewing the facts as pled in a light most favorable to the Fleck Plaintiffs, were misrepresentations of the present state of the law at the time the policy was issued. As such, the Fleck Plaintiffs have sufficiently pleaded the reliance element of intentional misrepresentation. However, the Complaint does not meet Federal Rule of Civil Procedure 9(b)'s requirements to plead fraud with particularity with respect to the intentional misrepresentation claim. The Complaint alleges that Plaintiffs "were assured that they could legally shelter $500,000 dollars of their income," (Compl. ¶¶ 35), and that Aviva "created and sold . . . life insurance policies by means of uniformly false and misleading advertising and sales presentations . . . and other marketing materials," (Compl. ¶ 21). The Complaint properly alleges that the alleged misrepresentations were made to the Fleck Plaintiffs in December 2004 and also identifies at least some of the specific misrepresentations: that "the program leading to the purchase of the Indianapolis policies was entirely legal, in full compliance with US tax laws, and safe from scrutiny or allowance or disqualification by the IRS with no risk of adverse tax consequences to these

Plaintiffs." (Compl. ¶¶ 35-38.) However, as Aviva correctly notes, the Complaint does not specify where the representations were made, nor whether each misrepresentation was oral or in writing. (Def.'s Br. Supp. Mot. Dismiss 5-6.) The Complaint also does not identify the specific source of each misrepresentation, attributing them generally to "INDIANAPOLIS,"[7] nor does it identify specifically any of the allegedly false and misleading marketing material. *Id.* at 6. As such, the Complaint fails to allege answers to all of the "newspaper questions" of "who, what, when, where, and how" of the alleged fraud.[8] *See Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994). Therefore the Court **GRANTS** Aviva's Motion to Dismiss Count Five as to the Fleck Plaintiffs' intentional misrepresentation claim.

The Court finds that the Plaintiffs' failure to properly allege fraud, as discussed above, also warrants dismissal of Count Six as to the Fleck Plaintiffs' claims. Although the negligent misrepresentation claim is labeled as a separate count from the intentional misrepresentation count in the complaint, the factual allegations underlying the claims are essentially the same. As the Fifth Circuit has explained, "when the parties have not urged a separate focus on the negligent misrepresentation claims," negligent misrepresentation claims are subject to Rule 9(b) in the same manner as fraud claims. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir.

---

[7]The Court notes that the Complaint lists Melvin Abrams as a source of at least some of the allegedly intentional misrepresentations, (Compl. ¶¶ 24, 35), but it does not specify which representations were made by Mr. Abrams as opposed to representations contained within Aviva's marketing materials or made by other agents of Aviva.

[8]Plaintiffs argue that their Complaint alleged fraud with sufficient particularity but also add additional detail and attach exhibits in support of their allegations in their Opposition Brief. Opp'n 7-8, Ex. 6-11. Plaintiffs may not amend their Complaint to add specificity through briefing. *Skidmore Energy, Inc. v. KPMG, LLP*, No. Civ A 3:03-2138-B, 2004 WL 3019097, at * 5 (N.D. Tex. Dec. 28, 2004). Further, as stated above, Section III(A)(ii), *supra*, the Court does not consider Plaintiffs' attachments to its Opposition when ruling on Aviva's Motion to Dismiss.

2003) (evaluating negligent misrepresentation in the same manner as fraud in part because both were "based on the same set of alleged facts"); *see also Biliouris v. Sundance Res., Inc.*, 559 F. Supp.2d 733, 737 (N.D. Tex. 2008) (dismissing negligent misrepresentation claim that was based on the same operative facts as an insufficient fraud claim); *Kougl v. Xspedius Mgmt. Co.*, No. 3:04-CV-2518-D, 2005 WL 1421446, at * 5-6 (N.D. Tex. Jun. 1, 2005) (dismissing negligent misrepresentation claim that restated the same factual basis as a fraud claim for failure to satisfy Rule 9(b)). Plaintiffs' negligent misrepresentation claim fails to satisfy Rule 9(b) to the same extent and for the same reasons as its intentional misrepresentation claim discussed above. Therefore the Court **GRANTS** Aviva's Motion to Dismiss Count Six as to the Fleck Plaintiffs' negligent misrepresentation claim.[9]

Aviva also challenges Count Six (negligent misrepresentation), because under Illinois law, the *Moorman* doctrine, also known as the economic loss doctrine, generally prohibits recovery of economic losses under a tort theory.[10] *See, e.g., Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 451 (Ill. 1982) (explaining that "contract, rather than tort, law provides the appropriate sets of rules of recovery" for economic losses in tort). One important exception exists for negligent misrepresentation claims where the defendant (1) is in the business of supplying information; and (2) supplies this information for the guidance of others in their business relations with others. *Gerdes*

---

[9]The Court also finds that the Plaintiffs' failure to properly allege fraud constitutes independent grounds for dismissing Count Five and Six as to the Paul Plaintiffs' claims.

[10]Plaintiffs argue that the *Moorman* doctrine does not apply to the current case, because the facts of *Moorman* involved a product liability dispute and are therefore distinguishable. (Opp'n 11-12.) The Court disagrees with this line of reasoning. *Moorman* has been consistently applied by Illinois courts in a wide range of cases outside of the context of product liability, including insurance policies. *See, e.g., LeDonne v. AXA Equitable Life Ins. Co.*, 411 F. Supp. 2d 957, 963 (N.D. Ill. 2006); *Gerdes v. John Hancock Mut. Life Ins. Co.*, 712 F. Supp. 692, 696 (N.D. Ill. 1989).

*v. John Hancock Mut. Life Ins. Co.*, 712 F. Supp. 692, 696 (N.D. Ill. 1989).[11] This exception must be construed narrowly "lest the exception swallow the rule." *Id.* at 699 n.8. An insurance agent has been viewed as in the business of providing non-informational products. *Id.* at 699-700. Further, Illinois courts have considered the business of an insurance company to be "accepting a risk in return for money," not supplying information. *Univ. of Chicago Hosps. v. United Parcel Serv.*, 596 N.E.2d 688, 691 (Ill. App. Ct. 1992) (quoting *Int'l Surplus Lines Ins. Co. v. Fireman's Fund Ins. Co.*, No. 88 C 320, 1989 WL 99771, at *2 (N.D. Ill. Aug. 17, 1989)). In explaining its decision, the *International Surplus Lines* court explained that "to hold otherwise would render every commercial enterprise which enters into a contract a company in the business of supplying information, thereby opening the flood-gates for negligent misrepresentation litigation." *Id.* Because the Complaint alleges that Aviva was an insurance company and Abrams was an insurance agent, (Compl. ¶¶ 17, 24, 35), the exception to the *Moorman* doctrine does not apply and the negligent misrepresentation claim cannot stand.[12] Accordingly, the Court finds that the Moorman Doctrine constitutes independent grounds to dismiss Count Six for negligent misrepresentation.

C.      *Count Seven (Fraudulent Concealment) and Count Eight (Breach of Fiduciary Duty)*

Count Seven alleges that by concealing and omitting material facts related to the insurance policies and 419 Plan, Aviva committed fraudulent concealment. (Compl. ¶¶ 102-110.) Count Eight pleads that Aviva breached its fiduciary duty to Plaintiffs through various misrepresentations and

---

[11]Intentional misrepresentation is another exception to the general rule barring economic recovery under a tort theory. *Gerdes,* 712 F. Supp. at 696 n.4.

[12] The Court does not reach the issue of whether negligent misrepresentation could be successfully pleaded against Abrams, if he was characterized as an insurance broker, nor the issue of whether a successful contract claim could be successfully pleaded against Aviva.

omissions. (Compl. ¶¶ 111-118.) To state a fraudulent concealment claim, a plaintiff must allege, in addition to the elements of fraud, that the defendant concealed a material fact when it was under a duty to disclose to the plaintiff. *W.W. Vincent & Co. v. First Colony Life Insurance Co.*, 814 N.E.2d 960, 969 (Ill. App. Ct. 2004) (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). A duty to disclose arises in fiduciary relationships. *Connick,* 675 N.E.2d at 593.

Under Illinois law, "it is well settled that no fiduciary relationship exists between an insurer and an insured as a matter of law." *Martin v. State Farm Mut. Auto. Ins. Co.,* 808 N.E.2d 47, 51-52 (Ill. App. 2004) (citation omitted). An implied-in-fact fiduciary relationship, however, may be created "where one places trust and confidence in another, thereby placing the latter party in a position of influence and superiority over the former." *Id.* at 52 (citation omitted). Such a position may arise due to "friendship, agency, or experience." *Connick*, 675 N.E.2d at 593 (citations omitted). "[S]ignificant dominance and superiority [are] necessary to establish a fiduciary relationship." *Martin*, 808 N.E.2d at 52.

Because Plaintiffs and Aviva stood in an insurer-insured relationship (Compl. ¶¶ 17-21, 24-29, 35-40), no fiduciary relationship exists as a matter of law. Therefore, Counts Seven and Eight hinge on whether an implied-in-fact fiduciary relationship has been pleaded. After reviewing the Complaint, the Court finds that it has not. Although the Complaint repeatedly makes the conclusory allegation that Aviva breached a fiduciary duty, it never alleges on what grounds it existed. (Compl. ¶¶ 5, 57, 112.) The Complaint fails to explain why a fiduciary relationship based on friendship, agency, or experience existed between Aviva and Plaintiffs. There are no allegations of a long-standing relationship between the parties, nor that Aviva was in a position of significant dominance and superiority. *See, e.g., Martin*, 808 N.E.2d at 52. While Plaintiffs contend in their opposition brief

that Aviva "held itself out as an expert, and was in a position of power in the relationship," the Complaint does not reflect such a relationship. (Opp'n 12.) Because the Court finds the Complaint devoid of well-pleaded facts to support a fiduciary relationship, the motion to dismiss Count Eight is **GRANTED**. Additionally, because Count Seven is dependent on pleading a fiduciary or other legal duty owed by Aviva to Plaintiffs, the Court also **GRANTS** the motion to dismiss Count Seven.[13]

D.      *Count Nine (Civil Conspiracy)*

Count Nine of Plaintiffs' Complaint alleges that Aviva conspired with its agents to defraud Plaintiffs. To allege a civil conspiracy claim under Illinois law, the complaint must show: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). Because conspiracies are often "shrouded in mystery," a plaintiff does not have to plead with specificity facts that are within the defendant's control. *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 895 (Ill. 1994). A plaintiff, however, must allege more than mere conclusions and must allege "specific facts from which the existence of a conspiracy may properly be inferred." *Fritz v. Johnston*, 807 N.E.2d 461, 471 (Ill. 2004).

The Complaint alleges that Aviva and its agents agreed to defraud Plaintiffs and those they

---

[13] The Court finds that the Plaintiffs' failure to properly allege fraud, as discussed in Section III(B), *supra*, constitutes independent grounds for dismissing Count Seven.

seek to represent through "misrepresentations, omissions, and concealment of materials facts." (Compl. ¶ 120.) Plaintiffs further allege that Plaintiffs were induced to purchase and ultimately did purchase Aviva's life insurance policies. (Compl. ¶¶ 120, 122.) As a direct and proximate result, Plaintiffs allegedly lost "millions of dollars in investment capital." (Compl. ¶ 123.)

Aviva moves to dismiss the civil conspiracy claim because the Complaint fails to allege the individuals who participated, the specific object of the agreement, the time the agreement was made, and acts to show an agreement or overt act. (Def.'s Br. Supp. Mot. Dismiss 11.) After reviewing the Complaint, the Court finds that the claim is not adequately pleaded. The Complaint sufficiently alleges that the object of the conspiracy was to induce the purchase of Aviva's insurance policies. But the Complaint fails to allege facts showing that an agreement was made. The Complaint does not allege any dates of this agreement between Aviva and its agents. Additionally, the Complaint fails to allege any acts to support the existence of the agreement. The Court recognizes that Aviva may not be able to plead specific facts surrounding the conspiracy, but this does not open the door for conclusory statements. There is nothing in the Complaint to infer that Aviva had an agreement with its agents.[14] Therefore, Plaintiffs have not properly pleaded a conspiracy claim, and the Court **GRANTS** the motion to dismiss Count Nine.

Aviva also challenges the civil conspiracy claim, because the alleged conspiring parties are

---

[14]As with their allegation of the RICO enterprise, Plaintiffs have set forth several conflicting compositions of who were the "agents." Based on the Complaint, the term "agents" appears to exclusively refer to Aviva's insurance agents, including Abrams. (Compl. ¶¶ 24, 35.) But Plaintiffs later raise other theories in their briefing. In their opposition brief, Plaintiffs characterize the conspiracy as the product of "Indianapolis–through Mel Abrams, Niche Marketing, and 419 Trust Administrators, Inc." (Opp'n 11.) At the bottom of the same paragraph, Plaintiffs recast the conspirators as "Indianapolis, Niche Marketing, [and] 419 Trust Administrators, Inc." *Id.* To be clear, the Court finds the Complaint fails to allege facts to support an agreement under all three of Plaintiffs' versions of the agents.

legally incapable of conspiring together. Under Illinois law, the acts of an agent are considered to be the acts of the principal. *Buckner v. Atlantic Plant Maint., Inc.*, 694 N.E.2d 565, 571 (Ill. 1998) (citing *Salaymeh v. InterQual, Inc.*, 508 N.E.2d 1155, 1158 (Ill. App. Ct. 1987)). As such, no conspiracy can exist between an agent and a principal. *Id.*

The Complaint alleges that "Defendant agreed with its agents to participate in a common scheme to use unlawful means . . . to induce Plaintiffs and those they seek to represent to purchase Indianapolis life insurance policies." (Compl. ¶ 120.) Although Plaintiffs never definitively explain to whom the term "agents" refers, the Court understands the term to mean Aviva's life insurance agents.[15] Because a principal cannot conspire with its agents, the Complaint does not allege a conspiracy among legally capable parties. Accordingly, the Court has an additional and independent ground to **GRANT** the motion to dismiss Count Nine.[16]

E.    *Count Ten (Accounting)*

Count Ten requests an accounting of Aviva's financial records. To state an accounting claim, the complaint must allege that there is no adequate remedy at law and one of the following: (1) "a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." *People ex rel Hartigan v. Candy Club*, 501 N.E.2d 188, 190 (N.D. Ill. 1986) (citations omitted). An exception exists even where an adequate remedy at law is available if a breach of fiduciary duty is involved. *Id.* (citing *Mayr v.*

---

[15]The Court reaches this conclusion based on a reasonable reading of the Complaint. The Complaint repeatedly characterized agents as those who made misrepresentations and sold insurance policies. (Compl. ¶¶ 4, 21.) Additionally, the sole agent specifically identified by name was characterized by the Complaint as one of Aviva's insurance agents. (Compl. ¶¶ 24, 35.)

[16] The Court finds that the Plaintiffs' failure to properly allege fraud, as discussed in Section III(B), *supra*, constitutes independent grounds for dismissing Count Nine.

*Chesman & Co.*, 195 Ill. App. 587 (1915)). To maintain an equitable accounting action, the plaintiff must meet a high standard of showing that the accounts between the parties are so complicated that they require a court in equity to unravel them to determine damages. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). This standard is rarely met, and a legal remedy is not inadequate simply because it requires a look into the defendant's business records. *Id.* at 478-479. Courts hold broad discretion to decide whether an equitable accounting is warranted. *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985).

Aviva challenges the claim on the grounds that it does not properly plead the absence of an adequate legal remedy or any of the other requisite elements. (Def.'s Br. Supp. Mot. Dismiss 11 n.9.) Plaintiffs made no response to Aviva's arguments. After reviewing the Complaint, the Court finds that the claim falls short, because it consists mainly of conclusory, unsubstantiated allegations. Plaintiffs allege that "Plaintiffs and those they seek to represent have need for discovery," "[t]he accounts of Defendant are of a complex nature," and "Plaintiffs . . . have no adequate remedy of law, as they cannot determine their monetary damages without inspecting the financial records of Defendant." (Compl. ¶¶ 127-29.) Such allegations give no indication whatsoever of a reasonable need for the court's intervention in unraveling. As a result, the Court **GRANTS** the motion to dismiss Count Ten.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant Aviva's Motion to Dismiss Plaintiffs' Complaint. All claims against Aviva Life and Annuity Company are hereby **DISMISSED WITHOUT PREJUDICE**. The Court does not take lightly dismissal of a claim without reaching

its merits. Thus, a plaintiff will be given the opportunity to amend a complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (noting that a court may dismiss a claim for failing to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted.") (citation omitted).

If Plaintiffs are able to replead any Counts to overcome all of the grounds stated herein for dismissal, they should do so by no later than twenty (20) days from the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than five (5) pages, explaining how the amendments overcome the grounds stated herein for dismissal. Should Plaintiffs replead, Aviva is hereby granted leave to file a response to Plaintiffs' synopsis. Any such response shall not exceed five (5) pages and must be filed within ten (10) calendar days of the repleading. No further briefing will be permitted.


      SO ORDERED.

      DATED December 14, 2010

                            _____

      JANE J. BOYLE
      UNITED STATES DISTRICT JUDGE