UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFF PAUL, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-1490-B |
| | § | |
| AVIVA LIFE AND ANNUITY | § | (Part of MDL No. 1983; Formerly |
| COMPANY, | § | No. CV 09-1038 in the |
| | § | Northern District of Illinois) |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

On December 14, 2010, the Court issued a decision granting a motion to dismiss filed by Defendant Aviva Life and Annuity Company ("Aviva"). Mem. Op. & Order Dec. 14, 2010 ("Mem. Op."). The Court dismissed all claims without prejudice and granted leave to amend. On January 3, 2011, Plaintiffs Jeff Paul, Margaret Paul and PPS Advertising Inc. ("the Paul Plaintiffs"), and Jim Fleck, Amy Fleck, and International Profit Systems Inc. ("the Fleck Plaintiffs") filed their First Amended Complaint ("FAC"). At issue now is the viability of the First Amended Complaint. Specifically, the Court must determine whether the allegations in the First Amended Complaint overcome the pleading deficiencies of the original Complaint, as detailed by the Court in its December 14, 2010 decision granting Aviva's motion to dismiss. For the reasons stated below, Plaintiffs' claims in the First Amended Complaint are hereby **DISMISSED WITH PREJUDICE**.

## I.

## BACKGROUND

In light of the Court's familiarity with the case, and the parties' extensive prior briefing, rather than have the parties engage in yet another round of briefing, the Court directed the Plaintiffs to file

a Synopsis with their First Amended Complaint detailing how the amended pleadings overcame the deficiencies in the original Complaint. The Court permitted Aviva to file a response.

On January 3, 2011, Plaintiffs filed their First Amended Complaint and Synopsis ("Synopsis"), contending that the amended pleadings are sufficient to overcome the pleading deficiencies previously outlined by the Court. On January 20, 2011, Aviva filed its response to the Synopsis (Def.'s Resp. to Pls.' First Am. Compl., hereafter "Response" or "Resp."), arguing that the amended allegations are still deficient under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). The issue is now ripe for determination.

## II.

## LEGAL STANDARDS

A.  *Law Applicable in MDL Cases*

This action is before the Court as a result of a forum transfer by the Multidistrict Litigation Panel. Therefore, as to matters of state law, the Court is bound to apply the state law of the transferor forum. 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure ("Wright & Miller") § 3866 (3d. ed. 2004) at 528-29 (2007) (citing *In re Air Disaster at Ramstein Air Base*, 81 F.3d 570, 576 (5th Cir. 1996) and *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (other citations omitted)). As to matters of federal law, however, the Court applies the law of the transferee court. *Menowitz*, 99 F.2d at 40 (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (other citations omitted)).

As this case was originally filed in Illinois federal district court, the Court applies Illinois state substantive law as to matters of state law. *See* 15 Wright & Miller § 3866 at 528-29 (and cases cited

therein). On the other hand, as to matters of federal law, the Court looks to the law of this Court and this Circuit for the controlling RICO and Rule 12(b)(6) and Rule 9(b) standards. *See, e.g., Prudential Ins. Co. of Amer. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008) (explaining that, as an initial matter, pleading requirements in federal courts are governed by the federal rules and not by state law).

B.  *Rule 12(b)(6) Standard*

In analyzing a motion under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). The motion should be granted only if the complaint does not include enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim must be "nudged . . . across the line from conceivable to plausible." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *SW Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

C.  *Rule 9(b) Standard*

A dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Rule 9(b) provides, in pertinent part, that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark*

*Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), modified on other grounds, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). In other words, the complaint must provide "the essentials of the first paragraph of any newspaper story." *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

## III.

## ANALYSIS

In their First Amended Complaint, Plaintiffs assert the following causes of action against Aviva: Counts One through Four (RICO violations under §§ 1962(a)-(d)), Count Five (intentional misrepresentation), Count Six (negligent misrepresentation), Count Seven (fraudulent concealment), and Count Eight (civil conspiracy).[1] To assess Plaintiffs' amended pleadings, the Court will consider the grounds for dismissal previously stated in its December 14, 2010 decision, the Plaintiffs' Synopsis, and Aviva's Response, as well as applicable law.

A.  *Counts One through Four (RICO violations under §§ 1962(a)-(d))*

To state a plausible RICO claim, a plaintiff must allege facts to show "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment,

---

[1] In their First Amended Complaint, Plaintiffs did not replead their breach of fiduciary duty and accounting claims alleged in the original Complaint.

- 4 -

conduct, or control of an enterprise." *In re Burzynski*, 989 F.2d 733, 741-42 (5th Cir. 1993) (quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)). In its December 14, 2010 decision granting Aviva's motions to dismiss, the Court dismissed Counts One through Four for failure to adequately plead a RICO enterprise and failure to plead a pattern of racketeering activity through predicate acts of wire or mail fraud. Mem. Op. 8-10. Both a RICO enterprise and a pattern of racketeering activity are common elements required for all four RICO claims alleged by the Plaintiffs. *Id.* (and cases cited therein). The Court also dismissed Counts Three and Four for failure to adequately plead an investment injury and a RICO conspiracy. *Id.* at 10-12. The Court now examines the First Amended Complaint to determine whether it remedies these defects.

i.   RICO Enterprise

The Court previously determined that the RICO enterprise pleaded was deficient in two major respects: first, the Complaint improperly defined the enterprise by its conduct, and second, ambiguity in the pleadings made it unclear who was included in the enterprise. *Id.* at 7-8. The Court observed:

> The Complaint has not characterized the enterprise as "an entity separate and apart from the pattern of activity in which it engages." *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987) (quoting *Turkette*, 452 U.S. at 583). Moreover, the Complaint also pleads a defective enterprise because it is unclear who is included in the 'group of persons' involved. *Turkette*, 452 U.S. at 583. The Complaint never states in a definitive manner which individuals or entities are in the enterprise.

*Id.* at 8.

In the First Amended Complaint, Plaintiffs continue to define the "Welfare Benefit Plan Enterprise" in terms of conduct, specifically the marketing and selling of insurance policies for use in § 419 plans. *See*, *e.g.*, FAC ¶¶ 12, 35-41. With regard to the persons involved, the complaint

remains ambiguous. Initially, Plaintiffs describe the group as "Indianapolis, Abrams, and Indianapolis' co-conspirators, Niche [Marketing, Inc.] and [Phillip D.] Rowe." FAC ¶¶ 11-12. However, Plaintiffs confuse this description by also referring to "National Benefit Trust ("NBT"), the "419 Trust Administrators," as well as "some entity known as National Plan Advisory Services" when describing the alleged mail and wire fraud conducted by the alleged enterprise. FAC ¶¶ 60, 63-64, 67, 79, 85. Because the enterprise remains improperly and ambiguously defined, Plaintiffs have failed to cure the deficiencies identified by the Court and therefore fail to state a RICO enterprise. As such, Counts One, Two, Three, and Four are **DISMISSED** under Rule 12(b)(6) for failure to plead a RICO enterprise.

### ii. Racketeering Activity

The "racketeering activity" element of a RICO claim has two components: (1) predicate acts and (2) a pattern of such acts. *In re Burzynski*, 989 F.2d at 742. Predicate acts include certain federal offenses enumerated in § 1961(1), such as mail and wire fraud. *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996). RICO mail fraud requires a showing of: "(1) a scheme to defraud by means of false or fraudulent representation, (2) interstate or intrastate use of the mails to execute the scheme, (3) the use of the mails by the defendant connected with [the] scheme, and (4) actual injury to the plaintiff." *In re Burzynski*, 989 F.2d at 742.

#### a. Sufficiency of Allegations for Predicate Acts of Wire and Mail Fraud

Because "Rule 9(b)'s particularity requirement applies to pleading fraud as a predicate act in a RICO claim," Plaintiffs must meet the heightened pleading standard of Rule 9(b) when alleging predicate acts. *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1004 (S.D. Tex. 1995) (citing *Tel-Phonic Servs. Inc. v. TBS Int'l. Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992)). In its December

14, 2010 decision, the Court determined that Plaintiffs failed to adequately plead predicate acts with the particularity required by Rule 9(b). The Court observed that:

> The Complaint references mail and wire fraud only three times and each instance is done in a conclusory boilerplate fashion. Although the Complaint pleads some dates related to Aviva's alleged program, such allegations are not tied to mail or wire fraud. Even the most detailed allegation fails to specifically allege the time, place, contents, and other requisite information of a predicate act of fraud.

Mem. Op. at 10 (citations omitted).

The First Amended Complaint remedies these defects in part, discussing in detail certain faxes, telephone calls, and emails in connection with the Paul Plaintiffs' insurance policies. *See, e.g.,* FAC ¶¶ 22, 114. The pleadings regarding the Fleck Plaintiffs remain woefully deficient, however. The First Amended Complaint alleges "The FLECKS were sold similar policies under the same or similar documentation [and] utilized the same or similar faxes, emails, mailing, and wire transfers described *infra*, as to the Pauls." FAC ¶ 70. Such general and vague pleading comes well short of the required particularity for pleading fraud under Rule 9(b). Nor does the alleged fraudulent marketing brochure on single-employer benefit plans meet the requirements of a predicate act. *See* FAC ¶ 120; Pls.' Ex. 53. As argued by Aviva, the brochure is a general piece of marketing describing typical features of a single-employer benefit plan, and does not make any representations about the legality of using such a plan in the manner employed by the Flecks. Resp. 2-3. Rather, the brochure directs Plaintiffs to "[c]onsult your own counsel for tax advice." *Id.*

Even if the First Amended Complaint alleged the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby", *Bonton*, 889 F. Supp. at 1004 (citing *Tel-Phonic*, 975 F.2d at 1139), Plaintiffs have not sufficiently alleged predicate acts of mail and wire fraud. As explained by the Court in Section

III(B), *infra*, Plaintiffs have not alleged why Aviva's representations were false when made, as required by Rule 9(b). As such, Plaintiffs have not sufficiently alleged the fraud underlying their claims of wire and mail fraud, meaning that they have not sufficiently alleged predicate acts. Accordingly, Counts One, Two, Three, and Four are hereby **DISMISSED** pursuant to Rule 9(b) for failure to plead predicate acts.

### b. Pattern of Racketeering Activity

In addition to sufficiently pleading predicate acts, Plaintiffs must also allege a "pattern" of such acts. *In re Burzynski*, 989 F.2d at 742. This two-pronged element requires the plaintiff to plead both (1) "that the predicate acts are related to each other", and (2) "that they either constitute or threaten long-term criminal activity." *Id.* at 742 (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "It is this factor of *continuity plus relationship* which combines to produce a pattern." *H.J. Inc.*, 492 U.S. at 239 (emphasis in original). Predicate acts are related where the acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240; *see also Word of Faith*, 90 F.3d at 122. The Paul Plaintiffs allege a series of interrelated predicate acts of mail and wire fraud conducted through the alleged "Welfare Benefit Plan Enterprise" that, as alleged, are not isolated events. FAC ¶¶ 72-101, 126. Thus, the Paul Plaintiffs have adequately pleaded that the predicate acts are related.

It is not enough that the alleged predicate acts be related, however. For a series of related predicate acts to constitute a RICO "pattern of activity," a plaintiff must also allege that the acts "amount to or threaten *continuing* racketeering activity." *In re Burzynski*, 989 F.2d at 742 (emphasis in original). "It is 'continuity' that assures a federal cause of action." *Id.* Continuity may be alleged

as "either a closed period of repeated conduct, or an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'" *Word of Faith*, 90 F.3d at 122 (quoting *H.J. Inc.*, 492 U.S. at 241). A closed period of conduct may be properly pleaded by alleging "a series of related predicates extending over a substantial period of time." *Id.* (citing *H.J. Inc.*, 492 U.S. at 242). An open period of conduct requires allegations of "a specific threat of repetition extending indefinitely into the future," or that "the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* (citing *H.J. Inc.*, 492 U.S. at 242-43).

All of the predicate acts alleged by the Paul Plaintiffs relate to the marketing, sale, and funding of their multiple employer 419A(f)(6) plan. This Circuit has continually dismissed RICO claims where Plaintiffs have alleged "multiple acts of fraud that were part and parcel of a single, discrete and otherwise lawful commercial transaction" because such claims fail to "assert that the corporate defendants posed a continuous threat as RICO persons." *Delta*, 855 F.2d at 244; *see also Word of Faith*, 90 F.3d at 123; *In re Burzynski*, 989 F.2d at 743; *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir. 1991) (dismissing RICO claims where the alleged predicate acts were part of an otherwise legitimate commercial transaction). Without attempting to determine whether the Paul Plaintiffs pleadings fall into closed or open-ended continuity under RICO, the Court determines that under *Delta* and its progeny, the Paul Plaintiffs have failed to plead continuity. Plaintiffs have not alleged facts of any other criminal activity by the alleged enterprise beyond the marketing and sale of a benefit trust funded by a cash-value whole life insurance plan. All of the predicate acts pleaded were part and parcel of the sale of Paul Plaintiffs' particular 419A(f)(6) plan. Therefore, Plaintiffs have failed to show that Aviva poses a continuing threat as a RICO person. Accordingly, Claims One, Two, Three, and Four as to the Paul Plaintiffs are hereby **DISMISSED**

pursuant to Rule 12(b)(6) for failure to allege continuity. *Delta*, 855 F.2d at 244. The RICO claims as to the Fleck Plaintiffs also do not demonstrate continuity because they were also part of a single otherwise legitimate transaction, and were for another type of employee benefit plan. Taken together, these two unrelated and discrete transactions could not form the basis for a pattern threatening long-term criminal activity. As such, the Fleck Plaintiffs' RICO claims are also dismissed under Rule 12(b)(6) for failure to plead continuity.

### iii. Count Three (§1962(a))

To successfully plead a RICO claim under § 1962(a), Plaintiffs must allege an investment injury. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 443 (5th Cir. 2000). This investment injury "cannot just flow from the predicate acts themselves." *Id.* In contrast, the investment injury is the injury that stems from the *investment* of racketeering proceeds. *Id.* (emphasis added). In its December 14, 2010 opinion, the Court dismissed the § 1962(a) claim because it was "entirely conclusory" and failed to allege "well-pleaded facts to support that Plaintiffs have suffered an investment injury, as opposed to an injury arising from the predicate acts." Mem. Op. at 11. In their First Amended Complaint, plaintiffs attempt to cure these deficiencies by stating, *inter alia*:

> INDIANAPOLIS used the proceeds derived from the aforesaid acts and lies, and pattern of racketeering activity, to invest, directly or indirectly, the funds generated by the WELFARE BENEFIT PLAN ENTERPRISE in violation of 18 U.S.C. § 1962(a), to further the WELFARE BENEFIT PLAN ENTERPRISE by virtue of INDIANAPOLIS' payment of additional commissions over the years on each Plaintiff's "contributions" leading to additional interest and penalties assessed by the IRS on Plaintiffs. This caused additional injury to the named Plaintiffs and those they seek to represent.

FAC ¶ 160.

Plaintiffs' § 1962(a) claim remains conclusory. Although the First Amended Complaint

alleges that Aviva used the defendants' funds to further the "Welfare Benefit Plan Enterprise," and this use led to the IRS's assessment of "additional interest and penalties," it is not clear how this use or investment caused "additional injury" to the plaintiffs, as opposed to the injury from the alleged predicate acts themselves. *Id.* As such, Count Three of the First Amended Complaint is **DISMISSED** under Rule 12(b)(6) for failure to plead an investment injury.[2]

### iv. Count Four (§ 1962(d))

In its December 14, 2010 decision, the Court dismissed Plaintiffs' RICO conspiracy claim for two reasons: first, the Court had already dismissed the other RICO claims and a RICO conspiracy claim must fail if there is no underlying RICO claim to support the conspiracy, and second, the Complaint insufficiently alleged an agreement to commit predicate acts. Mem. Op. at 12. Although the First Amended Complaint does allege more facts regarding the alleged agreement to commit predicate acts, the Court need not reach whether the amended complaint in fact sufficiently pleads an agreement. Because the Court has dismissed all other RICO claims in the First Amended Complaint for failure to plead a RICO enterprise and failure to plead a pattern of racketeering activity, *see* Sections III(A)(i)-(iii), *supra*, the First Amended Complaints' RICO conspiracy claim also fails. Plaintiffs' § 1962(d) RICO conspiracy claim is therefore **DISMISSED** under Rule 12(b)(6) for failure to plead an underlying RICO violation.[3]

### B. *Count Five (Intentional Misrepresentation) and Count Six (Negligent Misrepresentation)*

In its December 14, 2010 decision, the Court dismissed the Paul Plaintiffs' misrepresentation

---

[2] The Court previously dismissed Count Three due to the First Amended Complaint's failure to plead a RICO enterprise or a pattern of racketeering activity. *See* Sections III(A)(i)-(ii), *supra*.

[3] The Court previously dismissed Count Four due to the First Amended Complaint's failure to plead a RICO enterprise or a pattern of racketeering activity. *See* Sections III(A)(i)-(ii), *supra*.

claims for failure to "properly plead a false statement of material fact or reliance on such a statement."[4] Mem. Op. at 14. With regard to the Fleck Plaintiffs, this Court found in its December 14, 2010 decision that the Fleck Plaintiffs adequately pleaded a misrepresentation of the present state of law by Aviva.[5] *Id.* at 15. However, as both Plaintiffs and Aviva have noted, the Court based these findings on an error regarding the type of plan at issue. *See* FAC ¶ 14 n.1; Resp. at 5 n.4. Specifically, the Court conflated the § 412(i) plans in similar litigation before the Court with the two types of § 419 plans at issue here. *See* Mem. Op. at 14-15 (stating that Paul Plaintiffs did not allege Aviva's representations were false when made nor that they were reasonably relied upon given lack of definitive guidance until IRS 2004 revenue rulings and 2005 final regulations); *id.* at 15 (holding that Aviva made misrepresentations of the current state of the law to the Fleck Plaintiffs given a 2004 IRS Revenue Ruling on 412(i) plans). After examining the guidance surrounding § 419 plans, the Court must now vacate its prior conclusions, based on its analysis of the law regarding § 412(i) plans, including certain IRS revenue rulings and final regulations issued in 2004 and 2005, that 1) the Fleck Plaintiffs successfully pleaded a misrepresentation of the then-current state of the law by Aviva, and 2) that the Paul Plaintiffs did not plead intentional misrepresentation based on existing

---

[4]Rule 9(b) requires, inter alia, that fraud-based claims allege why the statements or actions at issue were fraudulent. *See, e.g., Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Further, under Illinois law, intentional misrepresentation claims must allege that the representations were justifiably relied upon by the plaintiffs, *Smith v. Kurtzman*, 531 N.E.2d 885, 889 (Ill. App. Ct. 1988), and the elements of negligent misrepresentation are essentially the same, except that the defendant's mental state is different, *Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989).

[5]The Court dismissed the Fleck Plaintiffs' misrepresentation claims, however, given that the original complaint did not sufficiently allege where the misrepresentations were made, or whether the representations were oral or in writing, nor did it identify the specific source of each misrepresentation or any of the allegedly false and misleading marketing material. *Id.* at 15.

law. However, upon further examination of the law regarding § 419 plans and the plaintiffs' claims, the Paul Plaintiffs' and the Fleck Plaintiffs' intentional misrepresentation claims still fail under Rule 12(b)(6) and Rule 9(b).

Both the Paul and Fleck Plaintiffs ground their misrepresentation claims in two IRS Notices issued in 1995 and 2000, Notice 95-34, and Notice 2000-15, respectively. FAC ¶¶ 14-21. With regard to Notice 95-34, in a similar case this Court held that Notice 95-34 "fails to provide definitive guidance that would render the § 419 Plans illegal" because it discusses tax problems that may be raised by certain § 419 arrangements rather than prohibiting them. *Chau v. Aviva*, No. 3:09-CV-02305-B, 2011 WL 1990446, at *9 (N.D. Tex. May 20, 2011). Though the Court did not address Notice 2000-15, the Court's conclusion in *Chau* that definitive guidance pertaining to § 419 plans did not exist in 2001, when the *Chau* plaintiffs purchased their plans, is applicable to this case because Notice 2000-15 serves only to reinforce Notice 95-34 by designating certain transactions as "listed", and does not add further substantive guidance on § 419 plans. *See* I.R.S Notice 2000-15, 2000-1 C.B. 826, 2000 WL 226755 (March 20, 2000) (identifying "certain trust arrangements purported to qualify as multiple employer welfare benefit funds exempt from the limits of §§ 419 and 419A of the Internal Revenue Code" described in *Notice 95-34* as "listed transactions" subject to certain disclosure and registration requirements) (emphasis added). Further, this Court noted in *Chau* that "it appears that confusion regarding § 419 plans led the IRS to issue further guidance through its final regulation at 68 Fed. Reg. 42,254 (July 17, 2003)." *Chau*, 2011 WL 1990446, at *10 n.8. Because no definitive guidance existed under Notices 95-34 or 2000-15 in regard to the Plaintiffs' § 419 plans, Plaintiffs have failed to sufficiently plead that Aviva's alleged representations were false when made.

With regard to the Paul Plaintiffs' multiple employer § 419A(f)(6) plan, even if the IRS Notices provided clear and definitive guidance, Aviva argues that "any representations regarding tax consequences would not be actionable because the policies were issued before the IRS issued its final § 419A(f)(6) rules and regulations in July 2003." Resp. at 5 n.3 (citing 68 Fed. Reg. 42254 (2003) (giving requirements for multiple employer § 419A(f)(6) plans and providing examples of what kinds of plans do and do not meet the requirements)). The Court agrees. Unlike Final Regulations adopted by the Treasury that have the force of law, IRS Notices are merely announcements or positions of the IRS that are not binding on courts and do not have the force of law. *United States v. Correll*, 389 U.S. 299, 305-06 (1967) (finding that long-standing and unchanged Treasury regulations are deemed to have received congressional approval and have the effect of law) (quoting *Helvering v. Winmill*, 305 U.S. 79, 83 (1938)); *King v. Lincoln Fin. Advisors Corp.*, CIV.A. 3:05-CV-1626-, 2006 WL 2067835 (N.D. Tex. July 25, 2006) (holding that IRS Notices are properly understood as proclamations of the IRS's position regarding the tax strategy in question) (citing *Guilzon v. C.I.R.*, 985 F.2d 819, 822 (5th Cir. 1993) (holding that IRS Notices have even less authority than IRS Revenue Rulings, which are not binding on courts)).

In regards to the Fleck Plaintiffs, the Notices issued by the IRS as well as the final regulation on multiple employer § 419A(f)(6) plans in 2003 are inapposite, as argued by Aviva. Resp. at 4-5. The Flecks entered into a § 419(e) single employer plan in 2004 after the Notices as well as the final regulation were issued. FAC ¶ 120; Pls.' Ex. 53. However, as discussed above, only multiple employer § 419A(f)(6) plans are discussed in Notice 95-34, Notice 2000-15, and the final regulation enacted in 2003. Therefore, any representations or omissions made by Aviva or its agents to the Fleck Plaintiffs about the tax benefits or legality of the plans were not misrepresentations of then-existing

law.

Because no law made the Paul Plaintiffs' multiple employer § 419A(f)(f) plan or the Fleck's § 419(e) plan illegal when Aviva sold the Plaintiffs their policies, any statements or omissions regarding the legality of these plans at those times could not have been misrepresentations of existing fact. Therefore, any representations or omissions made by Aviva or its agents about the tax benefits or legality of the plans were not false when made but rather non-actionable opinions or predictions regarding future IRS enforcement. Further, as held by this Court in a similar case, "it is inherently unreasonable for any person to rely on a prediction of future IRS enactment, enforcement, or non-enforcement of the law by someone unaffiliated with the federal government." *Berry v. Indianapolis Life Ins. Co.*, 600 F. Supp. 2d 805, 820 n.19 (N.D. Tex. 2009). Plaintiffs have not alleged that Aviva has any affiliation with the federal government or an ability to control future IRS actions such that they could have reasonably relied on Aviva's representations. *See* Mem. Op. at 14-15. As such, Plaintiffs have neither pleaded that Aviva's misrepresentations were false when made nor that Plaintiffs reasonably relied these representations.[6] Therefore, the Court **DISMISSES** Counts Five

---

[6]Under Illinois law, a claim for intentional misrepresentation is equivalent to a claim for fraudulent misrepresentation. *Powers v. Corn Prods. Int'l, Inc.*, 557 F. Supp. 2d 921, 927 (N.D. Ill 2008). *See also Bd. of Educ. of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989). Accordingly, Rule 9(b) applies to the plaintiffs' intentional misrepresentation claims. Further, although the negligent misrepresentation claim is labeled as a separate count from the intentional misrepresentation count in the complaint, the factual allegations underlying the claims are essentially the same. As the Fifth Circuit has explained, "when the parties have not urged a separate focus on the negligent misrepresentation claims," negligent misrepresentation claims are subject to Rule 9(b) in the same manner as fraud claims. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (evaluating negligent misrepresentation in the same manner as fraud in part because both were "based on the same set of alleged facts"); *see also Biliouris v. Sundance Res., Inc.*, 559 F. Supp.2d 733, 737 (N.D. Tex. 2008) (dismissing negligent misrepresentation claim that was based on the same operative facts as an insufficient fraud claim); *Kougl v. Xspedius Mgmt. Co.*, No. 3:04-CV-2518-D, 2005 WL 1421446, at * 5-6 (N.D. Tex. Jun. 1, 2005) (dismissing negligent misrepresentation claim that restated the same factual basis as a fraud claim for failure to satisfy Rule 9(b)). Plaintiffs' negligent misrepresentation claim fails to satisfy Rule 9(b) to the same extent and for the same reasons as its intentional misrepresentation claim.

and Six pursuant to Rule 9(b) and Rule 12(b)(6).[7]

C.   *Count Seven (fraudulent concealment)*

Plaintiffs' Synopsis does not identify how the First Amended Complaint remedies the deficiencies identified by the Court with respect to Plaintiffs' fraudulent concealment claim in its December 14, 2010 opinion. *See* Mem. Op. at 18-20. Instead, the Plaintiffs appear to have repeated their original allegations with little change. *Compare* Compl. ¶¶ 102-110 *with* FAC ¶¶ 178-185 (fraudulent concealment allegations). Therefore, Count Seven is **DISMISSED** pursuant to Rule 9(b) and Rule 12(b)(6), for the reasons stated in the December 14, 2010 Memorandum Opinion and Order.

D.   *Count Eight (civil conspiracy)*

To allege a civil conspiracy claim under Illinois law, the complaint must show: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators

---

[7]The Fleck Plaintiffs have also failed to remedy deficiencies identified in the Court's December 14, 2010 opinion regarding pleading Aviva's fraud with particularity, as they still do not "specify where the representations were made, nor whether each representation was oral or in writing". Mem. Op. at 15-16. In regard to representations made to the Flecks, the Plaintiffs allege generally "[t]he FLECKS were sold similar policies under the same or similar documentation [and] utilized the same or similar faxes, emails, mailing, and wire transfers described infra, as to the Pauls". FAC ¶¶ 70. Such general and vague pleading comes well short of the requisite particularity for pleading fraud under Rule 9(b). Plaintiffs also allege that Aviva or its alleged co-conspirators distributed "fraudulent" marketing material. FAC ¶¶ 70, 120; Pls.' Exs. 16, 17, 53. Aviva argues that these marketing materials are not false representations but rather general descriptions of whole life cash value insurance policies. The Court agrees. The materials identified are general in nature and identify typical features of employer provided life insurance such as "Deductible Contributions" and "Tax Free payment of benefits." *See*, *e.g.*, Pls.' Ex. 53. Because the First Amended Complaint fails to plead fraud with the requisite particularity, the Court has additional grounds to dismiss Counts of Five and Six as to the Fleck Plaintiffs for failure to satisfy Rule 9(b). Further, Plaintiffs do not address the Court's determination in the December 14, 2010 opinion that the *Moorman* Doctrine bars their negligent misrepresentation claim. The Court's reasoning in the December 14, 2010 opinion is equally applicable here. Accordingly the *Moorman* Doctrine constitutes independent grounds to dismiss Count Six under Rule 12(b)(6).

in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). A plaintiff must allege more than mere conclusions and must allege "specific facts from which the existence of a conspiracy may properly be inferred." *Fritz v. Johnston*, 807 N.E.2d 461, 471 (Ill. 2004).

This Court dismissed Plaintiffs' civil conspiracy claim in its December 14, 2010 opinion finding, *inter alia*, that the original complaint did not sufficiently allege an agreement, and noting that the Complaint set forth several conflicting compositions of the alleged conspirators. Mem. Op. 21-22. Plaintiffs' Synopsis points to various transactions surrounding the Paul Plaintiff's purchase of two life insurance policies in support of their contention that the First Amended Complaint remedies the deficiencies identified by the Court in its December 14, 2010 opinion regarding Plaintiffs' civil conspiracy claim. *See* Synopsis at 3 (citing FAC ¶¶ 72-81). The Court need not determine whether these allegations set forth sufficient facts to raise an inference that an agreement was made given that the Court has already dismissed all other claims in the First Amended Complaint, meaning that there is no tort upon which the civil conspiracy claim may be based. Further, the amended complaint still does not clearly state who the conspirators are, aside from Aviva. *See* Section III(A)(i), *infra* (discussing ambiguously defined enterprise). The actual civil conspiracy count asserts "Defendant agreed with its co-conspirators to participate in a common scheme to use unlawful means including but not limited to the misrepresentations, omissions, and concealment of material facts to induce Plaintiffs and those they seek represent [*sic*] to purchase Indianapolis life insurance policies," but the Court is left wondering who these co-conspirators are. FAC ¶ 187. Accordingly, Count Eight is

**DISMISSED** under Rule 12(b)(6).[8]

## IV.

## CONCLUSION

For the reasons stated above, the Court determines that Plaintiffs have failed to allege sufficient facts to overcome the previously-stated grounds for dismissal. Accordingly, with respect to the Plaintiffs' First Amended Complaint, it is hereby **ORDERED** that: Counts One through Four (RICO §1962(a)-(d)), Counts Five and Six (intentional and negligent misrepresentation), Count Seven (fraudulent concealment), and Count Eight (civil conspiracy) are **DISMISSED** with prejudice pursuant to Rule 9(b) and Rule 12(b)(6).

Normally the Court will allow a plaintiff the opportunity to amend where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *See McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir.1995); *see also Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."); *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir.2000) (while court may dismiss a claim for failing to comply with Rule 9(b), "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."). In this case, Plaintiffs have now had two multiple opportunities to state a claim, including their First Amended Complaint, filed after the Court's

---

[8] The Court finds that Plaintiffs' civil conspiracy claim is grounded in fraud given that it is based on fraud-based claims. As such, Rule 9(b) applies to this claim. Given that the Court has already found that the First Amended Complaint does not allege fraud with particularity, the civil conspiracy claim is also **DISMISSED** under Rule 9(b).

December 14, 2010 decision detailing the deficiencies in the pleadings. Under these circumstances, the Court determines that allowing further amendment will be futile and cause needless delay. Moreover, the Court notes that Plaintiffs have not requested the opportunity to replead. Accordingly, in its discretion, the Court determines that further amendment of the pleadings is not warranted and all of Plaintiffs' claims against Defendant Aviva are therefore **DISMISSED WITH PREJUDICE**.

    **SO ORDERED.**

    **DATED July 12, 2011.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE